# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CALVIN DUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:12-CV-269-TLS |
| ) | |
| PRATT INDUSTRIES (U.S.A.), INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Pratt Industries (U.S.A.) Inc.'s Motion for Summary Judgment [ECF No. 67]. The Plaintiff, Calvin Dunn, filed a Complaint [ECF No. 1] on July 13, 2012, alleging race discrimination and retaliation, pursuant to 42 U.S.C. § 2000, Title VII, and to 42 U.S.C. § 1981. This matter is fully briefed and ripe for the Court's review.

## FACTS OF THE CASE

Unless otherwise specified, the following material facts are not in dispute. The Plaintiff, an African American man, applied to work as a truck driver for the Defendant, a paper and packaging company, on December 29, 2010. (Overstreet Decl. ¶ 3 & Attach. 2, ECF No. 72-1.) The Plaintiff had prior experience as a truck driver with multiple companies. (Attach. 2 at 2.) As part of the application process, the Plaintiff submitted a paper application and was scheduled for an in-person interview with Rebecca Lockwin, the Defendant's representative.

The parties dispute the interim steps between the Plaintiff's submission of his application and the scheduling of his interview. The Plaintiff asserts that the Defendant's internal policy required pre-approval of job applicants for an in-person interview, which included a satisfactory

motor vehicle record ("MVR") and a background check. (Pl.'s Opp'n 6–7, ECF No. 80.) The Defendant argues that a "clean" MVR was required for hiring (Overstreet Decl. ¶ 12).[1] Additionally, the Defendant disputes that this internal policy was followed in the Plaintiff's case, as his interview was expedited before review of his MVR or a background check. (Lockwin Dep. 18:6–20:2, 22:1–22:22, ECF No. 72-4.)

Lockwin interviewed the Plaintiff on January 6, 2011, but the parties dispute how it concluded. The Defendant argues that Lockwin did not offer the Plaintiff the position, as it was conditional upon the completion of its MVR review. (*Id.* 27:13–27:16, 30:11–30:25.) The Plaintiff argues that Lockwin told him the job was his, asked how soon he could start, and scheduled him for orientation the following Monday. (Dunn Dep. 72:10–72:22, ECF No. 79-1.) The Defendant's internal review of the Plaintiff's application was completed on January 7, 2011, which came back adversely as to both his MVR and background check (Overstreet Decl. ¶ 8.) Shortly thereafter, Lockwin notified the Plaintiff that he would not be hired as a truck driver. (Lockwin Dep. 43:17–44:16, ECF No. 72-5.)

After his rejection, the Plaintiff obtained a trucking job with Perez Trucking in early 2011. (Lockwin Dep. 53:11–56:13.) Esteban Perez owns and operates Perez Trucking, which contracts with the Defendant to do runs from its Valparaiso facility. (*Id.* 51:3–52:4.) Through his employment with Perez Trucking, the Plaintiff worked on the Defendant's premises, and on September 13, 2011, he emailed the Defendant's corporate offices and claimed that he "was lied to and discriminated against" when it rejected his job application that January. (*Id.* Ex. B.)

---

[1] The Defendant is inconsistent in describing its MVR requirements for applicants. At one point the Defendant states that it "requires its truck driver to have a clean [MVR] during the prior three years, and no more than two violations in the prior five years" (Def.'s Mot. Summ. J. 1, ECF No. 68), but at a different point it states that "a truck driver must have a clear [MVR] and no more than three tickets for moving violations in the prior 36 months" (*Id.* 4).

In his email, the Plaintiff alleged that "over 10 new drivers have been hired" after he was rejected "and they all have one similarity, they are all [Caucasian]." (*Id.*) Additionally, he claimed that another applicant without proper qualifications was hired because he was a friend of a facility dispatcher. Finally, the Plaintiff said that he was "writing down everything that will strengthen my case." (*Id.*) The Defendant conducted an internal investigation of the Plaintiff's claims and, two days after receiving the email, banned the Plaintiff from its property and asked Perez Trucking to assign a different driver to Valparaiso. (Req. for Admis. Nos. 8, 10, ECF No. 69-8.) Although Perez Trucking did not formally terminate the Plaintiff's employment, reassignment of the Plaintiff led to his separation from the company because Perez Trucking only had two truck drivers, Perez and the Plaintiff. (Interrog. No. 5, ECF No. 79-4.)

**COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND**

In his Complaint, the Plaintiff alleged race discrimination against the Defendant under Title VII and 42 U.S.C. § 1981 for failing to hire him and then banning him from its property, and retaliation under Title VII and 42 U.S.C. § 1981 based on the Defendant's response to the Plaintiff's September 13 email. The Plaintiff timely filed a discrimination charge with the Equal Employment Opportunity Commission, which issued a final agency decision that was adverse to his claims. (Answer ¶ 7, ECF No. 11; Compl. ¶ 7, ECF No. 1.) On July 13, 2012, the Plaintiff filed his Complaint [ECF No. 1] with this Court. The Defendant filed its Answer and Affirmative Defenses [ECF No. 11] on September 18, 2012. Additionally, the Defendant filed a Third-Party Complaint [ECF No. 18] against Third-Party Defendant Perez Trucking on February 27, 2013, and Perez Trucking filed its Answer [ECF No. 24] on June 3, 2013. After the close of discovery, the Defendant and Perez Trucking jointly stipulated to dismissal of the Third-Party Complaint [ECF No. 57], which was granted on December 15, 2015 [ECF No. 58]. The Defendant moved

for Summary Judgment on April 4, 2016 [ECF No. 67]. The Plaintiff filed his Opposition [ECF No. 80] on July 8, 2016. The Defendant's Reply [ECF No. 87] was entered on September 2, 2016.

## STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in that party's favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and

avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## DISCUSSION

The Plaintiff "does not proceed upon Counts I and II of his Complaint, which allege race discrimination under Title VII and 42 U.S.C. § 1981." (Opp'n 1 n.1, ECF No. 80.) Accordingly, the Court deems the Plaintiff's race discrimination claims abandoned. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003). The Court directs its attention to the Plaintiff's claims for retaliation under Title VII and 42 U.S.C. § 1981, as the analysis for retaliation claims under both statutes is the same. *See Ortiz v. Werner Enters., Inc.*, 849 F.3d 760, 764 (7th Cir. 2016).

A retaliation claim requires a showing that the plaintiff (1) engaged in a statutorily protected activity, (2) suffered a materially adverse employment action, and that (3) a causal connection exists between the statutorily protected activity and the action taken. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). Retaliation may be proven under either the direct or indirect method of proof, *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994), but the parties focus solely upon the direct method of proof in this case (*See* Pl.'s Opp'n 11; Mot. Summ. J. 11–14). "Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Relevant circumstantial evidence includes "suspicious timing or ambiguous statements, evidence that others outside the protected class were systematically treated better, or evidence that the employer gave a pretextual reason for the adverse employment action." *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 877 (7th Cir. 2014). "Regardless of the type of evidence presented, the direct method is used when that evidence would permit the

5

trier of fact to find that unlawful discrimination caused the adverse job action." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014); *see also Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) (stating that the relevant analysis is whether a reasonable jury could infer prohibited discrimination).

A.  **Statutorily Protected Activity**

Title VII "protects an employee who opposes any practice made an unlawful employment practice by this subchapter." *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004) (quotation marks omitted). For the Plaintiff to succeed under the opposition clause, he need not show that the complained of conduct "actually was serious enough to constitute a Title VII violation. Instead, [he] need only show that, when instituting [his] grievance, [he] had a 'sincere and reasonable belief' that [he] was opposing an unlawful practice." *Magyar v. St. Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008) (quoting *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706–07 (7th Cir. 2000)). The objective reasonableness of the belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute. *Id.* "It is improper to retaliate against anyone for claiming a violation of Title VII unless that claim is 'completely groundless,'" *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002), and a "groundless claim is one resting on facts that no reasonable person possibly could have construed as a case of discrimination," *id.*; *see also Mattson*, 359 F.3d at 891 (noting that a claim must be "utterly baseless" to fail to qualify as a statutorily protected activity).

Here, the Plaintiff initially complained in an email to the Defendant on September 13, 2011, that he was discriminated against on the basis of his race. As an African-American, he asserted that "over 10 new drivers ha[d] been hired" who were all Caucasian after the Defendant

6

declined to hire him. (Lockwin Dep. Ex. B, ECF 72-5.) The Defendant argues that the Plaintiff's email was not a statutorily protected activity because the Plaintiff subsequently dropped his claim of race discrimination in this litigation, and because the Plaintiff lied on his employment application in the first place.

"[I]t is not unusual for a plaintiff to make claims that appear legitimate on the surface, but which, after discovery and a fuller inquiry, ultimately turn out to lack merit. Title VII precludes retaliation against a plaintiff for making such a 'grounded yet unsuccessful complaint.'" *Lord v. High Voltage Software, Inc.*, —F.3d—, 2016 WL 5795797, at *10 (7th Cir. Oct. 5, 2016) (Rovner, J., concurring and dissenting in part) (quoting *Fine*, 305 F.3d at 752). Although the Plaintiff has not pursued his race discrimination claim to this stage of the litigation, that determination does not endanger his retaliation claim. The Defendant's second argument boils down to this: the numerous lies and omissions on the Plaintiff's employment application and MVR show that the Plaintiff could not have had a "sincere and reasonable belief" that his race was the reason that his application was rejected. Construing the facts in the nonmovant's favor, the Court finds that there are enough disputes on this issue for a jury to find for the Plaintiff.

For instance, the Defendant argues that the Plaintiff falsified numerous parts of his application. The Plaintiff allegedly failed to accurately provide on his application the "reason given by [CFI]" for leaving his employment. (Reply 3, ECF No. 87.) The Defendant's employment application only asks an applicant "Have you ever been terminated or asked to resign from any job?" and then "If yes, please explain circumstances." (Appl. 2, ECF No. 72-6.) The Plaintiff wrote on his application that he was "Terminated without cause" and because he was "wrongfully-released . . . 'rear-ended' and released." (*Id.*) At various points in deposition testimony, the Plaintiff has stated that his relationship with CFI ended because he lacked a

7

hazmat endorsement, because the company was sold, and because a computer registered his truck over the speed limit after a rear-ending accident. (*See* Dunn Dep. 32:3–33:16, ECF No. 79-1.) The Defendant argues that only the latter reason was truthful, but the application does not require the applicant to state his *employer's* reasons for termination, only the "circumstances" of the termination. Moreover, it is quite common for job applicants to sugarcoat their credentials as best they can, which is what the Plaintiff did here: given his experience that freight companies did not terminate truck drivers solely for speeding, he listed that he was "terminated without cause" because he believed that when CFI was sold he became expendable due to his not possessing a hazmat endorsement. (*See* Dunn Dep. 32:3–33:16.) The Plaintiff would not have believed that his explanation provided a legitimate reason for not hiring him, and thus he could have still believed it was a race-driven decision.

Similarly, the Defendant claims that the Plaintiff falsely attested to never refusing a pre-employment drug test. (Reply 4.) The Defendant's employment application asks whether an applicant has "tested positive, or refused to test, on any pre-employment drug or alcohol test administered by an employer to which [the applicant] applied for, but did not obtain, safety-sensitive transportation work . . . during the past two years." (Dunn Dep. Ex. 10, ECF No. 79-1.) The parties contest whether or not the Plaintiff applied to work for C.R. England, and thus whether his deposition testimony is truthful. (Reply 4; Opp'n 5.) However, the wording in the job application clearly limits the relevant timespan to the past two years, and the Plaintiff's deposition testimony limits his purported relationship with C.R. England to around 1996. (Dunn Dep. 44:13–45:13.) Even if he did apply to work for C.R. England and failed to take a drug test, that occurred approximately 14 years before he completed his application with the Defendant.

Thus, the Plaintiff would not have believed that his answer provided a legitimate basis not to hire him.

Furthermore, the Plaintiff allegedly omitted "multiple moving-traffic violations" from his application. (Mot. Summ. J. 5.) One section of the Defendant's employment application states "Please list all moving traffic violations in the last five (5) years," and the Plaintiff only listed "Speeding." (Appl. 4.) A subsequent portion of the employment application asked for "Traffic Convictions and Forfeitures (3 years)," and the Plaintiff listed "Height Restriction." (*Id.* at 7.) The Defendant argues that the "Height Restriction" was actually a moving-traffic violation for disregarding a traffic control device, and that the dates listed were not correct. (Reply 4.) Admittedly, the Plaintiff's statements do not identically match his MVR, but that is not evidence that the Plaintiff intended to lie on his application. The Plaintiff thought that the "Height Restriction" was a safety violation given his conversation with the police officer at the time and so put it in the latter section, and he just happened to misremember the dates when he received his speeding tickets. Based on this evidence, a jury could find that the Plaintiff did not believe he was lying on his employment application with respect to the aforementioned entries.

In addition to these alleged falsifications of his application, the Defendant argues that the Plaintiff's MVR contained numerous violations that disqualified him from employment. Only three MVR entries occurred within the five years prior to his application, which were a license suspension for "Delinquent Child Support" in December 2009, a 6.0 point violation for "Disregard Traffic Control Device" in August 2008, and a 2.0 point violation for "Speeding" in July 2006. (Appl. at 8–9.) However, those entries are only disqualifying if the Defendant's hiring standards characterized them as disqualifying. The Plaintiff introduced an exhibit entitled

9

"Driver Hiring Standards," which states, in relevant part, that an applicant for employment with the Defendant needs to have:

> No more than three tickets for moving violations in the most recent 36 months prior to application
> No more than two tickets for moving violations in the most recent 12 months prior to application.

(Columbus Dep. Ex. A, ECF No. 79-2.) One of the Defendant's employees verified that these were the Defendant's hiring standards (*Id.* 28:12), but the Defendant disputes that this criteria was "in effect at the time that [Plaintiff] applied for the position" (Reply 3). If these standards were in effect when the Plaintiff submitted his application in December 2010, then it would be evidence that the Plaintiff's MVR satisfied the Defendant's hiring standards. Viewing this evidence in a light most favorable to the Plaintiff, a jury could find that the Plaintiff's MVR did not disqualify his employment application.

The error underlying this whole argument is that some errors in his application and prior violations in his MVR do not render the Plaintiff's initial complaint of race discrimination "utterly baseless." *Mattson*, 359 F.3d at 891. The Plaintiff put forward evidence that showed it was the Defendant's practice to conduct in-person interviews only after determining that an applicant had a positive background check and an acceptable MVR. A jury could find that it was reasonable for the Plaintiff to believe, based on this practice and what Lockwin told him during their in-person interview, that he was likely to be hired. Even if the Defendant deviated from its standard hiring practice, there is no evidence that the Plaintiff knew that the Defendant was deviating in its evaluation of his application. And a jury could find that it was reasonable for the Plaintiff to believe, after his application was rejected and he went to work for a third-party contractor where he observed the Defendant's premises and the racial composition of its employees, that he was denied employment because of his race. This is especially true because

there is no evidence that Lockwin or any other of the Defendant's employees offered the Plaintiff an explanation as to why he was not hired, either when his application was rejected in January or when he sent the September email.

Because the Plaintiff has presented evidence that demonstrates he had a sincere and reasonable belief that he was denied employment based on his race, a jury could find that the Plaintiff's initial complaint to the Defendant qualifies as statutorily protected activity.

**B.      Materially Adverse Employment Action**

"The requirement that a plaintiff show [he] suffered an adverse employment action as a result of [his] employer's alleged discrimination is an element of any Title VII claim." *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of the individual's race, sex, or engaging in a protected activity. 42 U.S.C. § 2000e-2(a)(1). Title VII's prohibition against discrimination with respect to terms, conditions, or privileges of employment reaches only "material, sufficiently important alterations of the employment relationship (often referred to as 'adverse employment actions')." *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 916–17 (7th Cir. 2007) (citing *Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006)). "A cognizable adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Chaudhry v. Nucor Steel-Ind.*, 546 F.3d 832, 838 (7th Cir. 2008) (quoting *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000)). The "purpose of the adverse employment action requirement is to provide a reasonable limiting principle for the type of conduct actionable under the statute."

*Phelan v. Cook Cnty.*, 463 F.3d 773, 780 (7th Cir. 2006). "[A] statute which forbids *employment* discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 653 (7th Cir. 2000).

An action is materially adverse for purposes of retaliation if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted). "'Even under the more generous standard that governs retaliation claims,' a reprimand 'without more' is not an adverse employment action." *Chaib*, 744 F.3d at 987 (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003)).

The first issue for the Court is whether or not the Plaintiff was within the "protected class of employees" at the time of the employment action, and thus is entitled to sue the Defendant. The Defendant argues that the Plaintiff cannot sue it under the statute because he was neither seeking employment with nor employed by the Defendant at the time it asked Perez Trucking to reassign the Plaintiff. The Plaintiff argues that liability under Title VII and 42 U.S.C. § 1981 is appropriate because the Defendant was a joint employer with Perez Trucking. A worker has two separate entities as employers, for purposes of Title VII, "if they share or codetermine matters governing the essential terms and conditions of the worker's employment." *See Moldenhauer v. Tazwell-Pekin Consol Commc'ns Ctr.*, 536 F.3d 640, 643 (7th Cir. 2009). "When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker. An independent entity with sufficient control over the terms and conditions of the employment of a worker formally employed by another is a joint employer within the scope of Title VII. *See id.*; *G. Heilman Brewing Co., Inc. v. N.L.R.B.*, 879 F.2d 1526, 1530–31 (7th Cir. 1989). Existence of an

employment relationship is a question of law for the court. *See Press Ganey Assocs., Inc. v. Dye*, No. 3:12-CV-437, 2014 WL 1116890, at *9–10 (N.D. Ind. Mar. 19, 2014).

Here, there is sufficient evidence to find that the Defendant was a joint employer of the Plaintiff. One of the Defendant's employees stated that it "contracted with a third-party carrier" in order to effectively carry out its business. (Columbus Dep. 33:10–11.) Further, "almost all of the work Perez Trucking handle[d wa]s for" the Defendant. (Interrog. No. 5.) When the Defendant discovered that the Plaintiff was working on its premises through Perez Trucking, the Defendant instructed Perez Trucking that the Plaintiff would be barred from its property. (*Id.* No. 4.) This evidence suggests a general contractor/subcontractor business relationship, with the Defendant exercising sufficient control over Perez Trucking's employees. The Court finds this evidence demonstrates the existence of a joint employer relationship.

The second issue the Court must decide is whether the Plaintiff suffered a materially adverse employment action. Reassignment without showing that there was a decrease in benefits or anything "adverse" is generally not an adverse employment action. *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 702 (7th Cir. 2001). The Defendant argues that its request to Perez Trucking for a new driver was not an adverse employment action, as it only sought reassignment of the Plaintiff. Given Perez Trucking' operations, however, such a request operated to terminate the Plaintiff's employment because "[w]ithout any work . . . to perform, he naturally had no work to do, and simply ceased to perform any work for Perez Trucking. There was no official or formal termination of his employment." (Interrog. No. 5.) It is reasonable to infer that the Defendant had basic information about Perez Trucking's business, including how many truck drivers it employed, because of the circumstantial evidence of their business relationship. With that knowledge, the Defendant effectively requested that Perez Trucking fire the Plaintiff. As

such, a jury could find that the Defendant's action constituted a materially adverse employment action.

## C.    Causal Connection

To satisfy the last prong, a plaintiff must show that his complaint was a substantial or motivating factor for the defendant's action. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642–434 (7th Cir. 2002). Absent direct evidence, a party may point to circumstantial evidence like suspicious timing, evidence that similarly-situated employees were treated differently, or a showing that the employee did not deserve the adverse employment action. *Volovsek v. Wis. Dep't of Agric.*, 344 F.3d 680, 689–90 (7th Cir. 2003). "A shifting justification for an employment action can itself be circumstantial evidence of an unlawful motive." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010) (citing *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723–24 (7th Cir. 2005)).

Here, the Plaintiff and Perez were the only drivers for Perez Trucking. Perez did not complain to the Defendant and was not reassigned, which shows differential treatment of similarly-situated employees. The Plaintiff also provided circumstantial evidence enabling a fact finder to conclude that the Defendant's action was retaliation for his email, given the suspicious timing of his reassignment: the Plaintiff emailed his complaint on September 13, 2011, and two days later he was barred from the property and the Defendant had requested that Perez Trucking reassign him. The Defendant disputes that this evidence demonstrates a causal connection. First, it argues that its reassignment request to Perez Trucking was justified because the Plaintiff's email signaled an intent to "gather additional information to harass and . . . use against the [Defendant]." (Def.'s Position Statement 4, ECF No. 79-3.) Second, the Defendant argues that

14

the Plaintiff was not qualified to work for Perez Trucking due to his MVR and his falsified employment application.

The Defendant's first justification has weaknesses. Although the Defendant feared that the Plaintiff would "harass the company," it never put forth evidence as to what, beyond the potential of race discrimination litigation, it feared the Plaintiff could or would do.[2] The Plaintiff only sent one email, which the Defendant investigated internally and determined was without merit. However, the Defendant did not communicate to the Plaintiff those reasons why his job application was rejected in January or why there was no race discrimination. A jury could construe the Defendant's actual response—asking Perez Trucking to reassign (effectively terminate) the Plaintiff without ever responding to his email—as a disproportionate one.

The Defendant's second justification appears to qualify as a shifting explanation. In its Brief, the Defendant suggested that it asked Perez Trucking to reassign the Plaintiff because he did not meet the Defendant's hiring standards—the Plaintiff should not have been allowed to indirectly work for the Defendant through a third-party. The Defendant has started focusing on this argument only later in the litigation, after it first focused on its concerns of harassment. *See Chaney*, 612 F.3d at 916 (noting that the reason for firing shifted from "use of profanity" at the termination meeting to "ignoring the call light and refusing a shift change" during litigation). But this argument is also internally inconsistent. The Defendant's representative stated that he did not "know what [Perez Trucking's] hiring criteria was at the time they employed [the Plaintiff]."

---

[2] Deposition testimony by Columbus contradicts the idea that the Defendant feared the Plaintiff would take any action:

> Q: When you received [the Plaintiff]s email of September 13, 2011, did you receive anything in this e-mail to be a threat of any kind?
> A: . . . I don't believe I perceived anything as a threat, no.

(Columbus Dep. 29:17–21.)

15

(Columbus Dep. 33:15–16.) So Perez Trucking's hiring standards could have been different enough from the Defendant's that none of the former's drivers would have satisfied the Defendant's hiring criteria. Without knowing or investigating Perez Trucking's hiring criteria, it would be incongruous to ask the Plaintiff to be reassigned in exchange for a different driver. Based upon the evidence presented at summary judgment, a jury could find that a causal connection existed between the Plaintiff's statutorily protected activity and the Defendant's materially adverse employment action.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion for Summary Judgment [ECF No. 67].

SO ORDERED on December 5, 2016.

                                                                s/ Theresa L. Springmann
                                                               THERESA L. SPRINGMANN
                                                               UNITED STATES DISTRICT COURT