UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| CALVIN DUNN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 2:12-CV-269-TLS |
| PRATT INDUSTRIES (U.S.A.), INC., | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Calvin Dunn, has sued Defendant Pratt Industries (U.S.A.), Inc., for race discrimination[1] and retaliation, pursuant to 42 U.S.C. § 2000, Title VII, and to 42 U.S.C. § 1981. On December 5, 2016, the Court issued an Opinion and Order [ECF No. 88] (the Summary Judgment Order) denying the Defendant's Motion for Summary Judgment [ECF No. 67]. Specifically, the Court found that, when viewing the evidence in a light most favorable to the Plaintiff, sufficient evidence exists upon which a reasonable jury could find that the Defendant was a joint employer of the Plaintiff, that the Plaintiff engaged in statutorily protected activity by emailing an initial complaint to the Defendant, and that the Defendant effectively took materially adverse employment action against the Plaintiff by requesting his reassignment.

This matter is before the Court on the Defendant's Motion for Reconsideration [ECF No. 90] and accompanying Brief in Support [ECF No. 91], requesting that the Court reconsider

---

[1] In its Summary Judgment Order, the Court noted that:

The Plaintiff "does not proceed upon Counts I and II of his Complaint, which allege race discrimination under Title VII and 42 U.S.C. § 1981." (Opp'n 1 n.1, ECF No. 80.) Accordingly, the Court deems the Plaintiff's race discrimination claims abandoned. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003).

(Opinion & Order 5, ECF No. 88.)

the Summary Judgment Order. The Defendant maintains that the Court should enter summary judgment in its favor on all claims because there are no genuine issues of material fact as to whether it qualifies an indirect or joint employer of the Plaintiff. The Plaintiff filed a Response [ECF No. 93] on February 10, 2017, and the Defendant filed a Reply [ECF No. 94] on February 27, 2017. This matter is now fully briefed and ripe for ruling.

## STANDARD OF REVIEW

A district court is "entitled to reconsider its initial denial of summary judgment, because the denial of summary judgment [i]s simply an interlocutory order, which the district court ha[s] broad authority to reconsider." *Peirick v. Ind. Univ.-Purdue Univ. Athletics Dep't*, 510 F.3d 681, 694 n.5 (7th Cir. 2007); *see also* Fed. R. Civ. P. 54(b) (stating that orders adjudicating fewer than all claims do not end an action and "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

> The Seventh Circuit has discussed the role of a motion to reconsider as follows: A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citations omitted); *see also LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) ("[A] Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence.") (internal quotation marks omitted). However, a Rule 59(e) motion may not be used simply to re-litigate issues that have already been decided. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (quotation marks omitted).

**DISCUSSION**

As the Court explained in its Summary Judgment Order, to prevail on a retaliation claim the plaintiff must show that he (1) engaged in a statutorily protected activity, (2) suffered a materially adverse employment action, and that (3) a causal connection exists between the statutorily protected activity and the action taken. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). The dispute in this matter centers around whether the Defendant qualified as an indirect or joint employer of the Plaintiff, and thus may properly be sued under Title VII and 42 U.S.C. § 1981. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of the individual's race, sex, or engaging in a protected activity. 42 U.S.C. § 2000e-2(a)(1). A worker has two separate entities as employers, for purposes of Title VII, "if they share or codetermine matters governing the essential terms and conditions of the worker's employment." *See Moldenhauer v. Tazwell-Pekin Consol Commc'ns Ctr.*, 536 F.3d 640, 643 (7th Cir. 2009). "When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker. An independent entity with sufficient control over the terms and conditions of the employment of a worker formally employed by another is a joint employer within the scope of Title VII. *See id.*; *G. Heilman Brewing Co., Inc. v. NLRB*, 879 F.2d 1526, 1530–31 (7th Cir. 1989). Existence of an employment relationship is a question of law for the court. *See Press Ganey Assocs., Inc. v. Dye*, No. 3:12-CV-437, 2014 WL 1116890, at *9–10 (N.D. Ind. Mar. 19, 2014).

At summary judgment, the Defendant argued that the Plaintiff could not sue it under the statute because he was not seeking employment with or employed by the Defendant at the time

of the incidents in question. The Plaintiff countered by arguing that the Defendant was a joint employer with Perez Trucking, but neither party focused much in their briefings on that question: the Plaintiff's Brief [ECF No. 80] devoted two pages to the argument that the Defendant "had an employment relationship with [the Plaintiff] when he worked for Perez on [the Defendant's] property" (Pl.'s Opp'n 15–17, ECF No. 80), while the Defendant's Reply [ECF No. 87] allocated its last two paragraphs to rebut the Plaintiff's joint-employer theory (Def.'s Reply 10–11, ECF No. 87). Based on the briefing and cases submitted, the Court found material issues of fact existed as to whether the Defendant was an indirect or joint employer of the Plaintiff:

> One of the Defendant's employees stated that it "contracted with a third-party carrier" in order to effectively carry out its business. (Columbus Dep. 33:10–11.) Further, "almost all of the work Perez Trucking handle[d wa]s for" the Defendant. (Interrog. No. 5.) When the Defendant discovered that the Plaintiff was working on its premises through Perez Trucking, the Defendant instructed Perez Trucking that the Plaintiff would be barred from its property. (*Id.* No. 4.) This evidence suggests a general contractor/subcontractor business relationship, with the Defendant exercising sufficient control over Perez Trucking's employees. The Court finds this evidence demonstrates the existence of a joint employer relationship.

(Opinion & Order 13, ECF No. 88.)

Now, in a Motion for Reconsideration, the Defendant presents a more developed argument that Seventh Circuit precedent forecloses this Court's finding that an issue of material fact exists in this case on the indirect or joint employer relationship question. The Defendant argues that this Court should have applied a five-factor balancing test, rather than ask whether the Defendant had "sufficient control over the terms and conditions of the employment" of the Plaintiff based on the economic realities of the relationship. (Opinion & Order 12.) And the Defendant presents additional cases, not included in its summary judgment briefings, that it argues support the position that it was not an indirect or joint employer.

The Seventh Circuit articulated five factors that a district court can balance to determine whether an indirect employer relationship exists:

> (1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment.

*Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015). But the Seventh Circuit has also stated that "the five-factor [balancing] test and the 'economic realities' test are not two independent, mutually exclusive inquiries" or "substantively incompatible." *Id.* Rather, the five-factor balancing test is "an operationalization of the 'economic realities' test," with the "the employer's right to control [being] the 'most important' consideration in ascertaining the existence of an employer-employee relationship." *Id.* at 702–03 ("Thus, the five . . . factors are simply a more detailed application of the economic and control considerations present in the 'economic realities' test."); *Nardi v. ALG Worldwide Logistics*, 130 F. Supp. 3d 1238, 1248 (N.D. Ill. 2015) ("Under any version of the appropriate test . . . the question is "whether the putative employer exercised sufficient control, . . . such that the putative employer can be held liable under Title VII."). This Court's Summary Judgment Order focused on the "most important consideration"—the employer's right to control, instead of laying out all five factors in its analysis. The Defendant's own briefing, which argues that there is negligible evidence in the record as to the other factors, convinces the Court that elaborating its analysis into all five factors is unnecessary.

Those cases that the Defendant offers for the first time in its Motion for Reconsideration do not compel the Court to reach a different conclusion. *See Love*, 779 F.3d at 697; *Moldenhauer v. Tazwell-Pekin Consol Commc'ns Ctr.*, 536 F.3d 640 (7th Cir. 2009). The plaintiff in *Love*

5

sought to impose Title VII liability on a general contractor because of race discrimination allegedly committed by the subcontractor for whom he worked. *Love*, 779 F.3d at 701. Love got into an altercation[2] at the worksite, and the general contractor barred Love from working there. *Id.* at 700. There was "no evidence that [the general contractor] had any specific involvement in Love's hiring," set his hours, or directly supervised him, which all weighed against finding the general contractor's "right to control." *Id.* at 703. But "[t]he question of Love's firing [wa]s a closer one," as the general contractor had "the ability to remove him permanently from the work site," even "over the objection of Love's direct supervisor," who was a subcontractor employee. *Id.* Permanently barring Love from the worksite "amount[ed] to a termination of Love's employment" with the subcontractor because "no other [subcontractor] projects were available." *Id.* What ultimately tipped the Seventh Circuit's scales to a finding of no joint-employer relationship was the lack of evidence that the general contractor's decision to permanently bar Love was an "attempt[] to jeopardize Love's continued employment with [the subcontractor] or his placement on other . . . projects." *Id.*[3]

The plaintiff in *Moldenhauer* worked for a non-profit provider of emergency communications for a city and county. *Moldenhauer*, 536 F.3d at 641. A director on the non-profit's board discharged her because she was excessively absent as a result of a medical condition, so she sued the non-profit and the municipal entities, alleging that they were all liable under the Family and Medical Leave Act (FMLA) as joint employers. *Id.* at 642–43. To begin, the Seventh Circuit disclaimed the use of any multi-factor test for finding a joint employer

---

[2] It was disputed whether Love "attempted to verbally diffuse the situation" or actually "pulled a knife during the altercation." *Love*, 779 F.3d at 700. "However, the particular details of the altercation [we]re ultimately irrelevant to [the court's] determination." *Id.* at 700 n.1.

[3] The *Love* Court's analysis of the four remaining factors in the five-factor balancing test either weighed against finding an employer-employee relationship between Love and the general contractor, or else were inconclusive. *See id.* at 704–05.

relationship under the FMLA, stating that "for a joint employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending upon the specific facts of each case." *Id.* at 644. The only evidence the court found that showed control was the non-profit's contract with the city to receive services, i.e., "payroll and insurance providers," but such a contract *by itself* was insufficient to establish a joint employer relationship. *Id.* at 645. Rather, the totality of the circumstances showed that neither municipal entity "exercised any control over Moldenhauer's employment," because neither played a role in her hiring, determined her compensation, or specified how many non-profit employees could work at a given time. *Id.*[4] Indeed, the non-profit's executive director "did not first contact [the municipal entities] for permission" to fire Moldenhauer, which was an additional factor that led the court to find that there was no joint-employment relationship. *Id.*

Both *Love* and *Moldenhauer* are distinguishable from this case. In *Love*, the general contractor's "right to control" was a close call because of the facts surrounding Love's firing. Ultimately, the Seventh Circuit decided that the general contractor had not "attempted to jeopardize" Love's employment with the subcontractor when it barred Love from the worksite. Here, the Court's Summary Judgment Order outlined the facts surrounding the Plaintiff's removal from the Defendant's premises:

> Given Perez Trucking' operations, however, such a request operated to terminate the Plaintiff's employment because "[w]ithout any work . . . to perform, he naturally had no work to do, and simply ceased to perform any work for Perez Trucking. There was no official or formal termination of his employment." (Interrog. No. 5.) It is reasonable to infer that the Defendant had basic information about Perez Trucking's business, including how many truck drivers it employed, because of the circumstantial evidence of their

---

[4] Those other cases that the Defendant belatedly offered in its Motion, *see, e.g.*, *Zampos v. W & E Commc'ns, Inc.*, 970 F. Supp. 2d 794 (N.D. Ill. 2013), are not binding upon this Court. Having already issued its Summary Judgment Order, a motion for reconsideration "may not be used simply to re-litigate issues that have already been decided." *Sigsworth*, 487 F.3d at 512 (quotation marks omitted).

> business relationship. With that knowledge, the Defendant effectively requested that Perez Trucking fire the Plaintiff.

(Opinion & Order 13.) This differs from *Love* because the short timespan between the Plaintiff emailing the Defendant about his prior application and the Defendant's request to Perez Trucking presents a reasonable inference that the Defendant "attempted to jeopardize" the Plaintiff's continued employment with Perez Trucking. *Moldenhauer* meets a similar fate, as one factor absent there—the power to "specify[] the number of [employees] working at any given time"—is present in this case. *Moldenhauer*, 536 F.3d at 645. The Defendant had the ability to specify which of Perez Trucking's employees were allowed on its premises, because it did so when it barred the Plaintiff. And whereas the non-profit's executive director did not need to ask for permission to fire his employee in *Moldenhauer*, here the Defendant initiated the contact with Perez Trucking to request a different trucker be assigned to the Plaintiff's position.

The Court notes that its Summary Judgment Order did not hold that the Defendant was a joint employer of the Plaintiff. Because the Defendant moved for summary judgment, the Court analyzed the evidence in the light most favorable to the nonmovant, found that an issue of material fact existed as to whether a joint-employment relationship existed, and held that the Defendant was not entitled to judgment as a matter of law. Should this case proceed to trial and it be appropriate at that time, the Defendant may renew its argument that the Plaintiff has not presented sufficient evidence that the Defendant was an indirect or joint employer.

## CONCLUSION

For the reasons stated above, the Defendant's Motion for Reconsideration [ECF No. 90] is DENIED.

SO ORDERED on April 20, 2017.

                                              s/ Theresa L. Springmann  
                                             CHIEF JUDGE THERESA L. SPRINGMANN  
                                             UNITED STATES DISTRICT COURT